643 So.2d 492 (1994)
Johnny Joseph GIORDANO, Jr. and Julie Diane Corbello Giordano, Plaintiffs-Appellants
v.
RHEEM MANUFACTURING COMPANY, et al, Defendants-Appellees.
No. 93-1614.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1994.
*493 Joseph Walter Greenwald, Ernest C. Hunt Jr., and Bernard Seymour Smith, for Johnny Joseph Giordano Jr. et ux.
Laurence E. Larmann, for Rheem Mfg. Co., et al.
Charles Leonard Patin Jr. and Jay Morton Jalenak Jr., for City of Westlake.
Before GUIDRY, C.J., and DECUIR and PETERS, JJ.
GUIDRY, Chief Judge.
Plaintiffs, Johnny and Julie Giordano, appeal from a summary judgment rendered in favor of defendant, the City of Westlake (Westlake), which dismissed with prejudice their negligence claims and the similar claims of defendant/cross-claimant, Rheem Manufacturing Company.[1] We affirm.

PROCEDURAL HISTORY AND FACTS
This wrongful death and survival action arises from the death of plaintiffs' two-year old son, Gavin Giordano. The child died from burn injuries sustained on April 20, *494 1991 when the Giordano's natural gas hot water heater caught fire as a result of its exposure to flammable gasoline and/or gasoline vapors. The Giordanos originally sued Rheem Manufacturing Company, the alleged manufacturer of the hot water heater; Westlake, the natural gas supplier; and, William and Diane Stewart, the former owners of the Giordano home. In their petition, plaintiffs alleged that Westlake was negligent in the following respects:
a. Connecting its natural gas transmission lines to the water heater and placing the water heater in operation when it knew or should have known that the heater was installed in a location where flammable materials would likely be stored and/or used and said installation was improper under the applicable standards and codes creating an unreasonable dangerous condition to the users of the water heater or those in close proximity thereto; and,
b. In failing to correct the above described condition by either stopping the flow of gas to the heater or warning the users or persons in close proximity of the dangerous condition which these defendants knew or should have known.
Rheem answered plaintiffs' suit and therein asserted a cross-claim against Westlake by pleading the same allegations of negligence contained in plaintiffs' petition.
After a period of discovery, Westlake filed the motion for summary judgment. The trial court determined that no material facts were in dispute and that, because Westlake owed no duty to plaintiffs under the particular facts, Westlake was entitled to summary judgment. On appeal, plaintiffs assert that the trial court erred because genuine issues of material fact are in dispute regarding conflicts in testimony and the duties assumed by Westlake.
In support of its motion for summary judgment, Westlake presented the deposition testimony of Johnny Giordano and Michael Johnson, Westlake's natural gas serviceman, along with other exhibits. Giordano stated that he and his family moved into their home in late September of 1990. They rented the home for four months before purchasing it on January 31, 1991. The home is located in Moss Bluff, an unincorporated area of Calcasieu Parish east of Lake Charles. Although this area is outside the geographical city limits of Westlake, the city supplies the area with natural gas service through its city-owned utility system. According to Giordano, the home contained two natural gas powered appliances, the central heating unit and the hot water heater involved in this case. The hot water heater was located in a separate 9' × 6' storage room at the rear of the carport.
It is undisputed that Johnson went to the Giordano home on September 28, 1990 to connect the natural gas. At the time, the Giordanos were in the process of moving into the house. According to Giordano, Johnson first turned on the gas supply to the home then, at Giordano's request, went to the storage room where the hot water heater was located. Giordano was having difficulty trying to light the hot water heater pilot light and asked Johnson for assistance. Giordano testified that Johnson declined to actually light the pilot light because he was not supposed to do that for anyone. However, Giordano further stated that Johnson instructed him as to how to light the pilot light. According to Giordano, Johnson did not get down on his hands and knees to look at or inspect the heater and said nothing to him about the storage of flammable substances in the vicinity of the hot water heater installation. Giordano remembered having some things stored in the room on that date, but he could not specifically recall what exactly was in there. He declined to speculate but did remember that the storage room was not completely empty. Also, Giordano stated that Johnson made no comment "one way or the other" about the hot water heater.
Giordano expressly stated that this was the only occasion when a Westlake employee entered the storeroom. After being instructed by Johnson, he properly lit the pilot light. Sometime later in the winter, a strong northerly wind extinguished the flame. Giordano once again successfully lit the pilot light. After this, he had no further problems with the hot water heater until the April 20, 1991 accident in question.
*495 Johnson's testimony concerning the September 28, 1990 service call to the Giordano residence varies from that of Giordano. Johnson testified that he and Peter Datenhoff, a co-worker, went to the residence to connect natural gas service. He stated, preliminarily, that, when connecting natural gas service to a customer's home, he must first conduct a shut-in test of the customer's line to determine if any leaks exist in the house. The test is accomplished by turning on the natural gas, unlocking the meter, slowly opening the valve and looking at the meter dial. If the dial turns, this indicates a leak is present in the house. If so, he is required to turn off the main valve and inform the customer to repair the leak before natural gas service can begin. He recalled doing this at the Giordano house and, upon determining that no leaks existed, left the natural gas valve on.
Contrary to Giordano's testimony, Johnson stated that he is allowed to and routinely does light customers' natural gas appliance pilot lights. Johnson went into the house and lit the pilot light on the central heating unit while Datenhoff went to the storage room to do the same on the hot water heater. When the central heating unit pilot light was successfully lit, Johnson went to the storage room. He explained that Datenhoff was having trouble lighting the hot water heater pilot light. Datenhoff enlisted Johnson's assistance. Johnson tried to light it but it kept going out. He informed Giordano that something was wrong with the pilot light and that he could not light it. According to Johnson, he told Giordano that he would have to turn off the hot water heater and disconnect or isolate it from the rest of the system. Johnson advised him to have a plumber or a heater repairman repair the hot water heater. He turned off the natural gas line valve as well as the hot water heater control valve and temperature control. He did not shut off the main natural gas line at the meter. Thereafter, he and Datenhoff left the premises and did not return to the home.
Johnson stated that, while at the Giordano residence, he saw nothing other than the hot water heater in the storage room. He specifically recalled not seeing any gasoline stored therein. Furthermore, he explained that, if he witnessed a possibly dangerous condition at a customer's home, he would not hesitate to inform the customer of the potential hazard. Johnson stated that, as a natural gas serviceman, he was not required to nor did he have any knowledge of plumbing codes. The fact that the hot water heater in this case was not elevated and its pilot light was close to the floor did not bother him because all the installations he sees in the Westlake and Moss Bluff area are similar in nature.
Westlake also presented the deposition testimony of Michael Warren, the city's natural gas superintendent, in support of summary judgment. He explained that, in connection with providing natural gas service to a customer's home, a natural gas serviceman also checks appliances for leaks or any out of the ordinary problems. The serviceman also attempts to light the pilot lights on the appliances. If he thinks a problem exists, the serviceman should not attempt to fix it. The repair is the homeowner's responsibility through his use of a licensed plumber. Warren further stated that, while he is aware that the Southern Building Code applies to structures and plumbing within the city of Westlake, he is unaware of what code, if any, applies to the unincorporated areas of Calcasieu Parish. In the city, however, the code is enforced through a plumbing inspector.
The fire occurred nearly seven months after city personnel connected natural gas service to the Giordano residence. During this period, Giordano stored his gasoline-powered push lawn mower and a 1.5 gallon rubber gas tank in the storage room. According to Giordano, the gas tank was stored on the opposite end of the storage room from the hot water heater.

OPINION
Summary judgment is to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law". La.C.C.P. art. 966(B). The trial court must first determine whether the supporting documents presented by the mover *496 are sufficient to resolve all material fact issues. If not, summary judgment must be denied in favor of a trial on the merits. A fact is material if its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. In other words, material facts are those which potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. Penalber v. Blount, 550 So.2d 577 (La.1989); South Louisiana Bank v. Williams, 591 So.2d 375 (La.App. 3rd Cir.1991), writ denied, 596 So.2d 211 (La.1992).
To satisfy his burden, the mover must show that it is quite clear what the truth is and that no real doubt remains as to the existence of any genuine issue of material fact. The court must closely scrutinize the papers supporting the mover's position, while the opposing papers are to be indulgently treated. If the mover's supporting documents are sufficient to resolve all material fact issues, then the burden shifts to the opposing party to present evidence that material facts are still at issue. At this point, the opponent may no longer rest on the allegations and denials contained in his pleadings. Vermilion Corporation v. Vaughn, 397 So.2d 490 (La.1981); Durrosseau v. Century 21 Flavin Realty, Inc., 594 So.2d 1036 (La.App. 3rd Cir.1992).
Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is summary judgment warranted. Any doubt is to be resolved in favor of trial on the merits. Thornhill v. Black, Sivalls, and Bryson, Inc., 394 So.2d 1189 (La.1981).
There is clearly a factual conflict, insofar as the testimony of Giordano and Johnson are concerned, surrounding what actually occurred in the storage room. The pertinent issue is whether this dispute involves a material fact. According to Giordano, Johnson declined to light the hot water heater and, instead, instructed him on the proper procedure for lighting the pilot light. On the contrary, Johnson stated that he attempted to light the pilot light and, when unsuccessful, advised Giordano to contact a licensed plumber to resolve the problem. He then isolated the hot water heater from the rest of the natural gas system. Under neither version of facts did Johnson actually light the hot water heater. There is no dispute, however, that on the occasion of the only visit by Westlake employees to the Giordano residence, no flammables were stored in the storage room and the Westlake employees did not warn against storage of flammables therein.
The question of whether the factual discrepancy alluded to is material must be resolved in light of the duty imposed upon Westlake as a natural gas supplier.
In Hughes v. Louisiana Power and Light Company, 94 So.2d 532 (La.App. 1st Cir. 1956), a suit arising from an electrical fire, the court held that the power generating company is not liable for damages arising from its failure to shut off electrical current passing to a customer's defective wires or equipment where it did not know (or reasonably should not have known) of any defect. However, when the power generating company knows, or should know, of such a defect and supplies power, it is liable based not on the defective condition itself but, more particularly, on its "... energizing of the line with knowledge of the conditions". Id., at 535; see also Northern Assurance Co. v. Louisiana Power and Light Co., 580 So.2d 351 (La.1991). Stated more succinctly in Hughes, supra, on rehearing, 94 So.2d at 537, in the absence of the power company's actual or constructive knowledge of defects in a private wiring system or appliances, the power company's duty terminates at its meter.
While these cases were decided within the context of an electrical power supplier, we perceive of no reason to limit this broad duty to situations involving electricity. It is a well settled tenet of our jurisprudence, and common knowledge as well, that natural gas, being highly flammable and explosive in nature, is an inherently dangerous instrumentality. Those who handle and distribute it are charged with that degree of care commensurate with its dangerous character for the protection of the public from any foreseeable injury. Reggio v. Louisiana Gas Service *497 Co., 333 So.2d 395 (La.App. 4th Cir. 1976), writs denied, 337 So.2d 187 and 337 So.2d 526 (La.1976) and cases cited therein. Thus, the duty enunciated in Hughes, supra, applies to natural gas suppliers as well because their commodity is at least as dangerous or possibly even more dangerous than electricity.
On appeal, plaintiffs contend that a genuine issue of material fact exists regarding the extent of advice and services actually tendered by Westlake personnel to the Giordanos. We disagree with plaintiffs' assertion that the discrepancies are material. Johnson properly connected natural gas service to the Giordano home. He then either (1) declined to light the hot water heater and instructed Giordano on how to properly do so; or, (2) unsuccessfully attempted to light the hot water heater and, upon observing a problem with the appliance, isolated the appliance from the remainder of the natural gas system and advised Giordano to contact a plumber. Under either scenario, it is clear that Johnson properly discharged his duty to the Giordanos.
From the testimony presented, it is undisputed that no flammable substances, sufficient to put Johnson on notice of a defective or dangerous condition, were stored in the room on the date in question. To Johnson, the installation appeared as normal as any other he had seen. Johnson was also under no duty to discover and warn the Giordanos of a design defect in the hot water heater. This duty rests with the manufacturer who is in a better position to discover such defects. Claiborne v. Rheem Manufacturing Co., 578 So.2d 153 (La.App. 5th Cir. 1991).
The hot water heater was eventually lighted and apparently worked properly throughout the winter with the exception of one occasion when the pilot light was blown out by a strong north wind. Giordano stated that he had no problem re-lighting the pilot light after this incident. Under these circumstances, even if Johnson did advise Giordano on how to light the pilot light, he did not thereby assume a greater duty to inspect the hot water heater or to warn Giordano of potential defects or hazardous conditions relating to the storage of flammable substances in close proximity to the hot water heater. The accident, which occurred nearly seven months later, was not in any way related to Johnson's presence at the Giordano home on September 28, 1990 for purposes of turning on natural gas service.
The factual dispute, which plaintiffs assert precludes summary judgment, is not material. In light of Johnson's duty as representative of the natural gas supplier, the fact is not essential to plaintiffs' cause of action. In other words, under either version of the facts, summary judgment is still proper because Westlake breached no duty owed to the Giordanos. Its representative, Johnson, had no knowledge nor should he have reasonably known of alleged defects in the hot water heater or that Giordano might, in the future, store dangerously flammable substances nearby.
For these reasons, summary judgment was properly granted and is affirmed. Plaintiffs, Johnny and Julie Giordano, are assessed with costs of this proceeding.
AFFIRMED.
NOTES
[1] Rheem did not appeal the dismissal of its cross-claim.