**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 96-30885
Summary Calendar
_____


JOSEPH OWENS
and
DEBRA LOOMAS OWENS,

Plaintiffs-Appellants,

VERSUS

RHEEM MANUFACTURING COMPANY;
RUUD MANUFACTURING CORPORATION,
a division of Rheem Manufacturing Company;
CITIZENS UTILITY COMPANY,
doing business as Louisiana Gas Service Company;
and
WAUSAU INSURANCE COMPANY,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Eastern District of Louisiana
94-CV-3078
_____


June 4, 1997
Before SMITH, DUHÉ, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Joseph and Deborah Loomas Owens (collectively, "Owens") appeal

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

an adverse jury verdict in their products liability and negligence actions against Rheem Manufacturing Company, Ruud Manufacturing Company, and Wausau Insurance Company (collectively, "Rheem") and Citizens Utility Company d/b/a Louisiana Gas Service Company ("LGS"). Finding no error, we affirm.

I.

Owens brought this action against Rheem pursuant to the Louisiana Products Liability Act, LA. REV. STAT. ANN. § 9:2800.51 *et seq.* (West 1991), alleging that the water heater manufactured by Rheem was defective because of Rheem's failure to attach to the heater an adequate warning label and because of the heater's unreasonably dangerous design. Owens also alleged that, because LGS knew that the heater was so defective, it acted negligently in connecting gas service to the water heater. Other parties to this action were dismissed via summary judgment, from which decision Owens does not appeal.

The relevant facts are not in dispute. Owens acquired a house in May 1989 and tore down the detached garage, in which the water heater had been stored, prior to moving in. To house the water heater, Owens constructed a three-sided make-shift structure, approximately 4'x 4', in the center of his backyard. In November 1989, LGS conducted its customary appliance turn-on procedures and, after finding no defective conditions, initiated gas service for

the house.  LGS did not, however, light the water heater pilot, as there were no water pipes connected to the heater.

Shortly after the LGS inspection, Owens began constructing a beauty salon for his wife in the location that had previously housed the now-demolished garage.  Owens completed the salon in the summer of 1990 and moved the water heater from its temporary location in the make-shift structure into a utility room inside the new structure.  Without the aid of LGS, Owens re-connected the plumbing and gas lines to the heater and lit the pilot.  The heater remained in this location until the date of the accident giving rise to this action.

In June 1994, Owens decided to replace the existing vinyl tile flooring in the beauty salon with ceramic tile.  After the vinyl tile had been removed, various spots of glue residue and vinyl tile backing remained on the concrete floor.  To remove the residue, Owens applied gasoline to the concrete floor.  After he had done so for approximately twenty minutes, the water heater ignited in a flash-fire explosion.  Owens suffered second- and third-degree burns to roughly fifty-five percent of his body.

Owens filed the instant action in Louisiana state court, and the defendants removed to federal court.  After a four-day trial, the jury exonerated Rheem and LGS, finding Owens 100% at fault.

II.

Owens contends that the district court erred with respect to several evidentiary rulings and to the jury instructions. We review a ruling to exclude evidence for abuse of discretion. *See Polanco v. City of Austin*, 78 F.3d 968, 982 (5th Cir. 1996). We will not reverse evidentiary rulings unless they are erroneous and result in substantial prejudice. *See Federal Deposit Ins. Corp. v. Mijalis*, 15 F.3d 1314, 1318-19 (5th Cir. 1994). To determine whether an erroneous ruling is prejudicial, we review the record as a whole. *See Polanco*, 78 F.3d at 982.

We review jury instructions to determine whether, as a whole, they state the law accurately and completely. *See Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1192 (5th Cir. 1995). To succeed on a challenge to jury instructions, the proponent must demonstrate first that the charge as a whole creates "'substantial and ineradicable doubt whether the jury has been properly guided in its deliberations.'" *Mijalis*, 15 F.3d at 1818 (citation omitted). Second, even if the instructions were erroneous, we will not reverse if we determine that, based upon the record as a whole, the challenged instruction could not have affected the outcome of the trial. *See id.* As a threshold matter, the challenger must demonstrate that the requested instruction is itself a correct statement of the law. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995).

Owens argues that the district court erred in excluding documentary evidence consisting of memoranda and reports of the United States Consumer Products Safety Commission ("CPSC") that detailed an on-going investigation of the ignition of flammable vapors by gas-fired water heaters. Owens did not proffer the evidence for the truth of the matters asserted, but rather to demonstrate Rheem's knowledge of the extent and severity of the problems experienced by many gas-fired water heaters. According to Owens, such proof of knowledge was relevant to its claim under LA. REV. STAT. ANN. § 9:2800.57(C), which provides:

> A manufacturer of a product who, after the product has left his control, acquires knowledge of a characteristic of the product that may cause damage and the danger of such characteristic, or who would have acquired such knowledge had he acted as a reasonably prudent manufacturer, is liable for damage caused by his subsequent failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.

We disagree that this was relevant. First, Rheem stipulated that flammable vapors could be ignited by a gas water heater and that it was aware of this fact as early as 1975, the year in which the water heater at issue was manufactured. Thus, Rheem's knowledge of the dangers inherent in its product, as confirmed by the CPSC memoranda, was never a contested issue.

Second, § 9:2800.57(C) is inapposite to Owens's legal claims, as subsection (C) applies to those situations in which the

5

manufacturer of a product becomes (or should have become) aware of a hazardous condition *after the product has left its control*. Rheem stipulated that it was aware of any hazards *before* the product left its control in 1975. Subsection (A), which applies to unreasonably dangerous conditions of which the manufacturer is aware "at the time the product left its manufacturer's control," provides the appropriate cause of action.

For substantially the same reasons, we dismiss Owens's challenge to the failure to instruct the jury regarding subsection (C). Given the fact that Rheem stipulated to its knowledge regarding the hazards of the gas-fired water heaters as early as 1975, the court's instructions accurately and completely conveyed the applicable law.

B.

Owens contends that the district court erred in excluding two video tapes that were offered to demonstrate, pursuant to LA. REV. STAT. ANN. § 9:2800.56(1), the feasibility of two alternative designs to the heaterSS18" stands and sealed combustion chambers. The tapes were not intended to depict circumstances substantially similar to those of the instant accident, but were offered as evidence of alternative feasible designs only.

Again, Rheem stipulated that putting the water heater on 18" stands would lessen the chance of ignition in some circumstances.

Rheem did not contest, therefore, that there existed an alternative design that was capable of preventing the claimant's damage. Rheem did argue, however, that, because of the amount of gasoline vapors present during Owens's treatment of the concrete floor, the use of an 18" stand would not have prevented the *instant accident*. Because, as Owens admitted, the tapes did not depict circumstances substantially similar to those of the instant accident, they were relevant to suggest alternative feasible designs onlySSan uncontested issue at trialSSbut not to contest Rheem's proximate causation argument.

C.

Owens avers that the district court erred in failing to instruct the jury that, if it found that the water heater lacked a warning label, the heater was unreasonably dangerous as a matter of law. In support of this instruction, Owens relies upon *Toups v. Sears, Roebuck & Co.*, 507 So. 2d 809 (La. 1987).

Because we do not believe that Owens's proffered jury instruction is a correct statement of law, we find no error. *See Mijalis*, 15 F.3d at 1318. The *Toups* court did not conclude that as a matter of law the failure to have a warning label on a heater is *per se* unreasonably dangerous, but rather concluded that "the numerous trial errors here resulted in a jury verdict that was

**7**

clearly wrong." 507 So. 2d at 819. Among those errors were (1) the court's failure to allow evidence demonstrating that the manufacturer knew of the dangers inherent in the water heater, which knowledge the manufacturer denied at trial; (2) the instruction on contributory negligence, which, the court determined, was inappropriate in light of the fact that the victim was three years old and that any contributing carelessness of his twelve-year-old brother fell short of negligence; (3) the instruction that a product seller is not presumed to know of any latent defects; and (4) the court's "simplistic jury charge that a design is not defective if reasonable care is taken in its adoption." *Id.* at 817-19.

Although the instant case involves a similar explosion resulting from gasoline fumes being sucked into a water heater, the similarities with *Toups* go no further. *Toups* involved a three-year-old childSSwho was incapable of reading a warning and whose recovery, the court concluded, could not have been reduced by any contributory negligence of his own or othersSSwho was injured when a water heater, which been stored continuously from its purchase and installation in a shed also housing gasoline and a lawn mower, was ignited by fumes emanating from the lawn mower. In contrast, the victim in the instant case was a knowledgeable adult whose purposeful use of gasoline as a solvent caused an explosion in the water heater, which heater had been moved (subsequent to its

initial installation and inspection) by the victim from a self-contained storage shelter to the beauty salon that he was con-structing in his backyard.  Given the distinguishing characteris-tics of *Toups*, it would have been erroneous "to use a legal determination by one court to inculpate these defendants when the case turns on the [substantially dissimilar] facts."

### D.

Owens urges that the district court misconstrued the duties imposed on a natural gas supplier under *Giordano v. Rheem Mfg. Co.*, 643 So. 2d 492, 496 (La. App. 3d Cir. 1994), which error caused the court to exclude otherwise admissible evidence and to give the jury faulty instructions.  According to Owens, *Giordano* places upon a natural gas supplier a continuing duty to discover a defect in the customer's wiring or equipment for as long as the company continues to supply natural gas to the customer.  Thus, evidence demonstrat-ing LGS's knowledge *from November 1989 until June 1994* (the period of its supply of natural gas to Owens's home) of the dangers inherent in failing to elevate the heater 18" off the ground or to provide a flammable vapors warning on the heater should have been admitted.  LGS concedes that *Giordano* governs but argues that its duty to discover defects ends after the initiation of gas service to the home.

We agree with LGS; nothing in *Giordano* imposes upon a natural

**9**

gas supplier a continuing duty to discover defects.  In fact, *Giordano* compels the opposite:

> [The natural gas supplier] was under no duty to discover and warn the Giordanos of a design defect in the hot water heater.  This duty rests with the manufacturer who is in a better position to discover such defects. . . . The accident, which occurred nearly seven months later, was not in any way related to [the natural gas supplier's] presence at the Giordano home on September 28, 1990 for purposes of turning on natural gas service."

*Id.* at 497.

As was the case in *Giordano*, it is undisputed that, when LGS arrived at the Owens's home in November 1989 to initiate gas service, there were no defects in the operation of the water heater, nor was the heater stored in such a manner as to create a dangerous condition.  Rather, the heater was stored at that time in a small shed in Owens's backyard, and nothing else occupied the shed.  It was Owens who later moved the heater to the beauty salon, without the knowledge of LGS, and caused the explosion by using gasoline to clean the salon floors.  Hence, as in *Giordano*, the accident, nearly five years after LGS's initial installation and inspection of the heater, was not in any way related to LGS's presence at Owens's home in November 1989.

### III.

Owens contends that the district court erred in granting LGS's motion for judgment as a matter of law ("j.m.l.") with respect to his prayer for punitive damages against LGS.  Given that we have

found no error on the question of liability, we need not address this issue.

AFFIRMED.