Reversed and Rendered and Opinion filed May 23, 2002









Reversed and Rendered and Opinion filed May 23, 2002.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-99-01108-CV

____________

 

ENTEX, A DIVISION OF NORAM ENERGY
CORP. n/k/a

RELIANT ENERGY-ENTEX,
NORAM ENERGY CORP. f/k/a

ARKLA, INC., ARKLA,
INC., INDIVIDUALLY and d/b/a ENTEX, Appellants

 

V.

 

MARIA T. GONZALEZ and JOSE SALVADOR
GONZALEZ, AS NEXT FRIENDS OF TERESA M. GONZALEZ, A MINOR CHILD, Appellees

 



 

On
Appeal from the 239th District Court

Brazoria County, Texas

Trial
Court Cause No. 95-G-1443

 



 

O P I N I O N

 

In
this personal injury case, Entex, a division of NorAm Energy Corp. n/k/a
Reliant-Energy-Entex, NorAm Energy Corp. f/k/a Arkla,
Inc., Arkla, Inc., Individually and d/b/a Entex
(collectively AEntex@) appeal a judgment in favor of Maria
T. Gonzalez and Jose Salvador Gonzalez, as next of friends of Teresa M.
Gonzalez, a minor child, (collectively, Athe Gonzalezes@) on the grounds that Entex owed the Gonzalezes no duty that was breached in this case.  We reverse the judgment of the trial court
and render a take-nothing judgment.








                                                                  Background

On April 22, 1994, four-year-old
Teresa Gonzalez was severely injured in a fire (the Afire@) in her family=s home.  The Gonzalezes sued
Entex, their gas supplier, for negligence.[1]  The evidence at trial showed that the fire
started in the Gonzalezes= utility room when gasoline vapors
came into contact with the pilot light of the family=s gas-fired water heater (the Awater heater@), which was not elevated off the
floor.  The jury found that negligence by
Entex was thirty-five percent responsible for causing the fire and awarded
damages which resulted in a judgment against Entex for $1,270,139.73.

Entex challenges the judgment on the ground that it had no
duty to warn the Gonzalezes of any dangerous
condition regarding the water heater because: (1) it had no duty to inspect the
Gonzalezes= property; (2) it had no actual
knowledge of any dangerous condition there; (3) Entex=s policies, practices, and procedures
did not create a duty to inspect or warn the Gonzalezes
about the condition of their water heater; and, (4) in the alternative, any common-law
duty Entex had was satisfied by the preventative measures that Entex had
already taken.

Standard of Review

A
legal duty must exist before a defendant can be liable for negligence.  Reeder v. Daniel, 61 S.W.3d 359, 364
(Tex. 2001).  Whether a duty exists is a
question of law for the court to decide from the facts surrounding the
occurrence in question.  Thapar v. Zezulka,
994 S.W.2d 635, 637 (Tex.1999).








In
this case, Entex preserved its complaint regarding a lack of duty by asserting
in its motion for judgment notwithstanding the verdict (AJNOV@) that it owed the Gonzalezes no duty as a matter of law.  A trial court may grant a JNOV if there is no
evidence to support one or more of the jury findings on issues necessary to
liability.  Brown v. Bank of
Galveston, Nat=l Ass=n,
963 S.W.2d 511, 513 (Tex. 1998).  In
determining whether there is no evidence to support the jury verdict, we
consider the evidence in the light most favorable to the verdict and reasonable
inferences that tend to support it.  Id.  We thus address whether there is any evidence
that Entex owed the Gonzalezes any duty that it
breached in this case.

                                                               Existence
of Duty

The
Gonzalezes contend that, when Entex sent its
serviceman (the Aserviceman@) to their home to replace the gas meter nearly three years
before the fire, he had a duty to: (a) inspect the condition of the water
heater; (b) warn them of the danger posed by the water heater being unelevated in a utility room where materials with flammable
vapors were, or were likely to be, stored;[2]
and/or (c) refuse gas service to the water heater until it was elevated.

                                         Scope
of the Negligence Charge Submitted

Even
assuming the existence of the duty asserted by the Gonzalezes,
in order to find Entex negligent for breaching that duty, the jury would have
had to conclude that: (1) a dangerous condition existed; (2) Entex knew of the
dangerous condition; and (3) Entex failed to exercise reasonable care to warn
or otherwise make the condition safe. 
These elements are essentially the same as those necessary for a finding
of premises liability, as contrasted from ordinary negligence, i.e., a
negligent activity.  However, decisions
of the Texas Supreme Court in recent years have repeatedly and uniformly held
that liability based on the existence of these elements can not be imposed
unless the negligence question submitted to the jury also contains instructions
or definitions setting forth these elements (the Aadditional elements@).  See, e.g., Clayton W. Williams, Jr. v. Olivo, 952 S.W.2d 523, 528-30 (Tex. 1997).[3]








In
this case, the jury charge had no instructions or definitions containing the
additional elements, nor were any such instructions or definitions sought by
the Gonzalezes (or Entex).  Therefore, although the jury charge was
correct with regard to a theory of recovery based on a negligent activity, it
does not support liability based on the duty asserted by the Gonzalezes relating to a dangerous condition of property.[4]  In other words, despite the absence of a
charge error, the judgment can not be affirmed based on violation of a duty
that the jury was not asked to consider. 
However, because this court arguably has discretion in such a
circumstance to either remand the case for another trial or render judgment,[5]
we proceed to consider whether the law imposes on Entex the duty asserted by
the Gonzalezes.

                                                                  Duty
to Inspect








It has long been established under
Texas law that a utility has no duty to inspect a customer=s wiring, appliances, or the like,
which the utility did not install and does not own or control, for defects
before supplying electricity or gas to the customer.[6]  To the extent the Gonzalezes
argue in this case that Entex=s right to withhold gas service to the water heater
effectively gave it control over the water heater and thereby subjected it to
an affirmative duty to inspect the water heater for defects before turning the
gas back on, we decline to so hold because it would eviscerate the foregoing
long-established rule to the contrary. 
In addition, to the extent that such a duty would obligate a utility,
before turning gas or electricity on for a customer, to identify and inspect
each of the customer=s gas or electric appliances for potential defects, such a
burden would be unreasonable and well beyond the range of ordinary care.

                                                                     Other
Duty

To the extent the unelevated
condition of the water heater in the utility room would have been plainly
evident to the serviceman and thus required no inspection to detect, we must
determine if that condition is of a type, severity, and immediacy of  danger that gives rise to a duty by a utility
to act to protect its customer.[7]








A
gas company may be liable if facts show that it fails to act reasonably after
having notice of defects in the pipes through which gas flows.  See Lane v. Community Natural Gas Co.,
123 S.W.2d 639, 643 (Tex. 1939). 
However, in declining to find a duty by a gas provider to warn of, or
refuse to supply gas to, an unelevated water heater
located in a garage, a California Court of Appeals has distinguished that
condition from a leaking or otherwise unsafe pipe, connection, or appliance on
the basis that the latter could itself cause an explosion or fire if gas were
merely supplied to it.  See Salazar v.
S. Cal. Gas Co., 63 Cal. Rptr. 2d 522, 527-28
(Cal. Ct. App. 1997, review denied).[8]  Salazar further reasoned that
available data showed no certain correlation between the elevation of gas-fired
water heaters and a decrease in the incidence of fires caused by flammable
vapors coming into contact with the water heaters, but possibly an increase in
injuries and destruction from elevating them. 
Id. at 529-30.[9]  Thus, regardless where in a home an otherwise
safe gas-fired water heater is located or how it is positioned, the danger of
fire or explosion can ultimately be avoided only if flammable vapors are kept
away from it.  See id. at
530-31.  Similarly, if the focus of
safety efforts is on the elevation of water heaters rather than the storage of
flammable vapors near them, it could arguably lull gas customers into a false
sense of security regarding the safety of elevated water heaters.  Id.

Based
on these considerations, we do not believe that a negligence duty can be
imposed on Entex based solely on the unelevated
condition of a water heater that it neither installed nor owned or
controlled.  Rather, any duty to assure
that water heaters are elevated should be imposed, if at all, on those who
specify, sell, or install them and are thereby in a position to bring about
that result from the outset rather than after the fact.  Likewise, any duty to prevent flammable
vapors from being placed near gas-fired appliances (whether elevated or not)
should be imposed, if at all, on appliance sellers and installers and, once any
necessary warning is reasonably provided, the owner of the appliance.  We therefore hold that a gas provider can be
subject to liability for failing to prevent flammable vapors from being ignited
by a gas-fired appliance only where the provider has knowledge that flammable
vapors actually are being, or will be, stored near the appliance.[10]

                                           Entex=s Knowledge of Flammable Vapors

The
Gonzalezes also argue that Entex had a duty to warn
or refuse service because there was legally sufficient evidence that its
serviceman had actual knowledge during the service call that flammable vapors
were being stored near the water heater.








If
more than a scintilla of evidence exists to support a finding, the evidence is
legally sufficient.  Helena Chem. Co.
v. Wilkins, 47 S.W.3d 486, 502 (Tex. 2001). 
However, evidence that is so weak as to do no more than create a mere
surmise or suspicion of its existence is no evidence.  Texarkana Mem=l Hosp., Inc. v. Murdock, 946 S.W.2d 836, 838 (Tex.
1997).  Thus, meager circumstantial
evidence from which equally plausible but opposite inferences may be drawn is
speculative and legally insufficient to support a finding.  Wal-Mart Stores, Inc. v. Gonzalez, 968
S.W.2d 934, 936 (Tex. 1998).  In this
regard, a vital fact may not be established by piling inference upon
inference.  Schlumberger Well
Surveying Corp. v. Nortex Oil & Gas Corp.,
435 S.W.2d 854, 858 (Tex. 1968). 
Therefore, facts from which an inference may properly be drawn must be
established by direct evidence, not by other inferences.  See Rounsaville
v. Bullard, 154 Tex. 260, 276 S.W.2d 791, 794 (Tex. 1955).

In
this case, there was no direct evidence that, on the date of Entex=s service call, a lawn mower or any
flammable vapors were located in the utility room at all, let alone near the
water heater, or that Entex=s serviceman saw any there. 
As circumstantial evidence of these facts, the Gonzalezes
rely on their testimony to the effect that they always stored their lawn mowers
and gasoline container on the floor of the utility room.  José Gonzalez further testified that the only
thing for which they kept gasoline was their lawn mower, i.e., they only
kept gasoline when they had a lawn mower. 
This testimony is legally sufficient to prove that, during any periods
in which the Gonzalezes had lawn mowers, they stored
them and their gasoline in the utility room.

However,
one portion of the foregoing testimony is specifically limited to the time of
the accident, and there is no indication, as to the remaining portions, of the
periods of time to which they pertain. 
Nor is there any evidence that the Gonzalezes
owned a lawn mower at the time of the service call or that they always owned
one.[11]








Even
if we could infer that a lawn mower or gasoline was in the utility room on the
day of the service call, in order to find evidence supporting a duty, we would
have to further infer that either was near enough to the water heater that day
to present a danger[12]
and was at least visible to, if not actually seen by,[13]
the serviceman among any other items stored there.[14]  Because these necessary inferences cannot be
validly drawn from the direct evidence provided, legally sufficient evidence
does not exist to prove that Entex had knowledge that flammable vapors were
being stored near the Gonzalezes= water heater on the date of the
service call.

                                                      Statutory
/ Regulatory Duty








The
Gonzalezes also argue that Entex had a duty to warn
of, or refuse gas service to, their water heater by virtue of a statute and
Railroad Commission regulation.  See
Tex. Utilities Code Ann. ' 104.251 (Vernon 1998)  (A[a] gas utility  shall furnish service, instrumentalities, and
facilities that are safe, adequate, efficient, and reasonable.@); 16 Tex. Admin. Code ' 7.45 (4)(D) (West 2001)
(authorizing, but not requiring, Entex to disconnect gas service where there is
a violation of Entex=s rules for the operation of nonstandard equipment or a known
dangerous condition).  However, the Gonzalezes cite no cases imposing a negligence duty based
on these, or any similar or analogous, statute or regulation.[15]

When
civil liability is based on a statute, among other things, the standard of
conduct must be clearly defined in the statute and the injury must grow directly
out of a breach of that standard.  Praesel v. Johnson, 
967 S.W.2d 391, 395-96 (Tex. 1998). 
Examples of statutes on which negligence liability has been based
include traffic provisions prohibiting specific driving conduct[16]
and the statute requiring the reporting of child abuse.  See Thapar,
994 S.W.2d at 639-40.  Because the
statute and regulation upon which the Gonzalezes rely
do not prohibit or require any specific conduct, they do not provide an
adequate basis for imposition of a negligence or negligence per se duty.

                                                              Assumption
of Duty

The
Gonzalezes also assert that Entex voluntarily assumed
a duty to them and other customers to inspect their appliances for unsafe
conditions because: (1) it generally requires them to correct hazardous
conditions before it will provide gas service; (2) it has a legal right of
access to customers= premises; and (3) in this case, the serviceman turned the
gas supply to the house back on and re-lit the pilot light on the unelevated water heater after replacing the gas meter.  The Gonzalezes
further assert that, because the water heater was no longer a danger while the
gas was turned off, the serviceman increased the risk of harm when he turned
the gas back on and/or re-lit the pilot light, making a showing of reliance unnecessary.








To
establish a negligence duty based on such an undertaking, there must have been
evidence of: (1) an undertaking by Entex to render services to the Gonzalezes which Entex should have recognized as necessary
for their protection; and (2) either that (a) Entex=s negligence increased the risk of
harm to the Gonzalezes; or (b) their harm was
suffered because of their reliance on the undertaking.  See Torrington Co. v. Stutzman,
46 S.W.3d 829, 838 (Tex. 2000); Restatement
(Second) of Torts ' 323 (1965).  In determining whether there is an increased
risk of harm, we compare the risk of harm resulting from the negligence to that
existing before, not during, the undertaking.[17]

In
this case, there is no evidence of a request to the serviceman to inspect the
water heater or advise the Gonzalezes of its
condition; or that Entex=s tariff contains any such undertaking.  The Gonzalezes also
assert that, by having internal procedures to inspect and warn customers about unelevated water heaters and storing flammable vapors near
them,[18]
Entex assumed a negligence duty to follow those procedures in this case.  However, such internal procedures do not
create a negligence duty where none would otherwise exist.[19]  Therefore, an undertaking did not arise from
Entex=s internal  procedures.








In
addition, we have found no evidence that any risk of harm from the water heater
was greater as a result of the service call than it had been before it or that
the Gonzalezes relied[20]
on Entex=s alleged undertaking to inspect
their water heater and to warn or refuse service in light of any defects or
hazards therein.[21]  With regard to reliance, the Gonzalezes contend that they were entitled as a matter of
law to rely on the fact that Entex is bound by Texas statutes and regulations
governing gas utilities and by Entex=s own tariff to provide safe gas
service.  However, the Gonzalezes cite, and we have found, no authority to support
such implied or constructive reliance, and rather than providing proof of actual
reliance by the Gonzalezes,[22]
it would effectively operate to eliminate that reliance requirement in this
context.  Therefore, we conclude that
there was no evidence that Entex assumed a negligence duty in this case.

                                                                Contractual
Duty








The
Gonzalezes also argue that Entex had a negligence
duty arising from its contractual relationship with them and the public duty
imposed by its tariff.  See, e.g.,
Montgomery Ward & Co. v. Scharrenbeck, 204
S.W.2d 508, 510 (Tex. 1947) (recognizing that a contract to make repairs
creates a relationship and duty of care whereby the person who makes the
repairs can be liable for negligence in doing that work).  However, Scharrenbeck
is distinguishable from this case in that the negligence there was in
performing the work that had been contracted for.  See id.  In this case, Entex came to the Gonzalezes= house to change the gas meter and could have been liable for
negligence in performing that work.  But
there is no evidence that it had any contractual obligation to inspect, repair,
or warn about the water heater. 
Therefore, we find no evidence of a negligence duty arising from Entex=s contractual obligation to replace
the gas meter.

Finding
no evidence of any negligence duty by Entex to the Gonzalezes
that was breached in this case, we sustain Entex=s first and second issues,[23]
reverse the judgment of the trial court, and render judgment that the Gonzalezes take nothing against Entex.

 

 

 

/s/        Richard H. Edelman

Justice

 

Judgment rendered
and Opinion filed May 23, 2002.

Panel consists of
Justices Hudson, Edelman, and Lee.[24]  (Lee, J. not participating.)

Publish C Tex.
R. App. P. 47.3(b).

 

 











[1]           The Gonzalezes also sued the manufacturer of the water heater
but settled their claims against it before trial.





[2]           The Gonzalezes contend that the unelevated
condition of the water heater in the utility room was either apparent to the
serviceman when he went into the utility room during his service call (the Aservice call@) or, if
it was not then apparent, he had a duty to inspect the water heater to
determine whether it was unelevated and flammable
vapors were near it.





[3]           See
also Torrington Co. v. Stutzman, 46 S.W.3d 829,
838 (Tex. 2000) (holding that a negligent undertaking, i.e., assumption
of duty, theory of recovery also requires submission of particular elements in
charge instructions or definitions because, like a premises liability theory,
it requires factual predicates to be established beyond those required to
impose liability for ordinary negligence). 
This is not a departure from the requirement of broad-form submission,
but a means to assure that a broad-form submission sets forth the theory of
recovery that is actually relied upon to establish liability.  See id.  (noting that the added elements should be
included in instructions accompanying a broad-form negligence question).  As in Torrington, the charge in this
case was also not sufficient to support a finding of liability based on
negligent undertaking.





[4]           Conversely,
the Gonzalezes do not contend that there is evidence
of liability based on a negligent activity, as the charge submitted would have
supported.





[5]           See
Tex. R. App. P. 43.3(b) (when
reversing a trial court=s judgment, the appeals court must render the judgment
that the trial court should have rendered except when the interests of justice
require  remand for another trial); Torrington,
46 S.W.3d at 841 (stating that cases have been remanded in the interest of
justice where the reversing decisions have altered or clarified the way in
which a claim should be submitted to the jury).





[6]           See
Central Power & Light Co. v. Romero, 948 S.W.2d 764, 766-67 (Tex. App.CSan Antonio 1996, writ denied); Beans v. Entex, Inc.,
744 S.W.2d 323, 325 (Tex. App.CHouston [1st Dist.] 1988, writ denied); Huddleston
v. Dallas Power & Light Co., 93 S.W.2d 199, 200 (Tex. Civ. App.CFort Worth 1936, writ dism'd).





[7]           In
determining whether a tort duty should be recognized, courts consider several
interrelated factors, including the risk, foreseeability,
and likelihood of injury weighed against the social utility of the actor's
conduct, the magnitude of the burden of guarding against the injury, and the
consequences of placing the burden on the defendant.  Edward D. Jones & Co. v. Fletcher,
975 S.W.2d 539, 544 (Tex. 1998).





[8]           See
also Giordano v. Rheem Mfg. Co., 643 So.2d 492,
494-97 (La. Ct. App. 1994) (holding that gas supplier had no negligence duty to
warn of or refuse gas to unelevated water heater in
storage room where there were no flammable vapors near the water heater when
gas service was commenced); but cf. Harris v. Northwest Natural Gas Co.,
588 P.2d 18, 20 & n.5, 23 (Or. 1978) (holding that gas provider was not
liable under strict liability theory but finding without explanation, that
plaintiff=s complaint that gas company was negligent in failing
to warn of danger that flammable vapors can be ignited by gas appliances was
sufficient to state a claim for negligence).





[9]           As
reflected in the testimony in this case, elevating a water heater can lessen
the chance of fire from vapors that are heavier than air, but increase the
likelihood of fire from vapors that are lighter than air.  Similarly, to the extent that elevating a
water heater protects from the risk of flammables stored on the floor, it may
provide less protection from those placed above floor level, such as on a
shelf.





[10]          There
is no evidence in this case that an unelevated water
heater is itself a dangerous condition, but only that a dangerous condition can
be created if flammables are placed near it. 
Cf. City of San Antonio v. Rodriguez, 931 S.W.2d 535, 536 (Tex.
1996) (holding that the dangerous condition was not the leaky roof but instead the
slippery floor that resulted when water leaked through the roof).





[11]          Not
only does the evidence fail to support an inference that the Gonzalezes owned a lawn mower at the time of the accident
or at all times, but Maria and José Gonzalez each testified that there were
(unspecified) periods of time before the accident during which they did not own
a lawn mower, thus affirmatively establishing that they did not always own a
lawn mower.





[12]          We have
found no evidence of how near the water heater the lawn mower and gasoline were
stored in the utility room or what other items were stored between them.  To the extent the evidence had shown that
flammable vapors were visible in the utility room at the time of the service
call, but were placed a safe distance away from the water heater, an immediate
danger would not have been present, and an inference that the Gonzalezes needed no warning to do so would have been at
least equally plausible with any contrary inference.





[13]          Because
there is no evidence showing that the serviceman had either actual or
constructive knowledge of flammable vapors being near the water heater during
his service call, we need not address whether actual or only constructive
knowledge was needed.





[14]          The
serviceman had no recollection of his visit to the Gonzalezes= house.





[15]          Nor, as
discussed above, is there evidence of a known unsafe condition on the date of
the service call.





[16]          See Praesel, 967 S.W.2d at 395-96.





[17]          See
Central Power & Light Co., 948 S.W.2d at 769, n.7 (holding, in the
alternative, that reversal was required because there was no evidence that a
negligent inspection left the plaintiff in worse condition than if an
inspection had never been undertaken);  Restatement
(Second) of Torts ' 323 cmt. c (noting that the
actor may abandon his undertaking at any time unless by giving aid, he has put
the other in a worse position than he was in before the actor attempted to aid
him).





[18]          In
support of this argument, the Gonzalezes cite an
Entex employee=s testimony that the Entex procedures were part of his
job and Apart of the deal with the customer@ for which Entex does not charge extra.





[19]          See
Jacobs-Cathey Co. v. Cockrum,
947 S.W.2d 288, 291-92 (Tex. App.CWaco
1997, writ denied) (holding that company=s internal
policy of removing debris left at its work sites by other parties did not
impose upon the company a negligence duty to parties injured by unremoved debris); Estate of Catlin
v. Gen. Motors Corp., 936 S.W.2d 447, 451 (Tex. App.CHouston [14th Dist.] 1996, no writ) (holding that
company=s safety policies restricting consumption of alcohol
on its premises did not create negligence duty that would subject the company
to liability for failing to comply with those policies); Williford
Energy Co. v. Submergible Cable Servs., Inc., 895
S.W.2d 379, 386-87 (Tex. App.CAmarillo 1994, no writ); see also Salazar v. S.
Cal. Gas Co., 63 Cal Rptr.2d 522, 525-32 (Cal. Ct. App. 1997, review
denied) (holding that gas company had no negligence duty to warn its customer
about the hazards of unelevated water heaters or to
discontinue service, despite internal company policy of warning customers that elevating
water heaters to at least eighteen inches would reduce the risk of flammable
vapors being ignited).





[20]          Nor was
there any evidence that the Gonzalezes even knew
about these procedures.





[21]          Fort
Bend County Drainage Dist. v. Sbrusch, 818 S.W.2d
392, 396-98 (Tex. 1991) (holding that JNOV was proper where there was no
evidence of the reliance necessary to create a duty under an undertaking
theory); Williford Energy Co., 895
S.W.2d at 386-87 (holding that, for undertaking theory, plaintiff cannot
rely on internal procedures of company if plaintiff was unaware of and did not
rely on these procedures).





[22]          See
 Restatement
(Second) of Torts ' 324A cmt. e (1965)
(describing reliance as being induced to forego other remedies or precautions
against such a risk); id. illus. 4 (workman is hired to inspect
elevator, negligently fails to detect defect, reports that elevator is in good
condition, and injury results from undisclosed defect, i.e., the
elevator is used in reliance on the report); id. illus. 5 (railroad watchman
negligently fails to warn of approaching train, and motorist, who knows of
usual presence of watchman, receives no warning, drives onto track, and is
injured by train, i.e., after affirmatively relying on the lack of a
warning).





[23]          We need
not reach Entex=s third issue, asserted in the alternative.





[24]          Senior
Justice Norman R. Lee sitting by assignment.