## HUDDLESTON v. DALLAS POWER & LIGHT CO.

No. 13341.

Court of Civil Appeals of Texas.
Fort Worth.
March 13, 1936.

Rehearing Denied April 24, 1936.

John W. West and Vaughan & Work, all of Dallas, for appellant.

Worsham, Burford, Ryburn & Hincks and Autry Norton, all of Dallas, for appellee.

BROWN, Justice.

Appellant J. C. Huddleston, father of a little girl of tender years, Betty Joe Huddleston, as next friend for his minor daughter, brought suit against appellee, Dallas Power & Light Company for damages alleged to have been sustained by the little girl when she came in contact with a loose wire on the premises occupied by the Huddlestons.

The evidence does not disclose to whom the house belonged, but the Huddlestons testified that they rented it from a real estate man by the name of Galloway, who was agent for an owner unknown to them. It was not shown how old the house was; nor does the evidence disclose how long it had been wired for electricity. We are not advised who did the wiring, but we gather from the testimony that the house had been used before and that electricity had been used by the occupants of the house.

We do not feel the necessity of discussing more than two of the theories on which appellant seeks to hold appellee in damages. If appellant is not entitled to recover under either or both of these theories, he could not recover at all.

Appellant first contends that appellee was negligent, in that its employees failed to use ordinary care in connecting the wires in the house, and that by the exercise of ordinary care appellee's employees would have discovered the wire that was loose and hanging down on the premises.

Appellant further contends that appellee's employees were guilty of negligence because they violated section 4 of Ordinance No. 2609, in that the employees connected the electric current from the distributing wires with the wires in appellant's house when no certificate of approval had been issued by the city building inspector of the city of Dallas authorizing such connection and the use of such wiring in the house.

Section 4 is as follows: "That it shall be unlawful for any person, firm or corporation to make connections from a source of electrical energy to any electrical wiring, devices and/or equipment for the installation of which a permit is required, until a certificate of approval has been issued by the City Building Inspector, authorizing such connection and the

use of such wiring, devices and/or equipment."

The case was tried to a jury, and at the close of the offering of testimony the trial court gave the jury a peremptory instruction to find for appellee, and judgment was entered for appellee on the instructed verdict. From this action the appeal is taken.

It seems clear to us that the giving of the peremptory instruction was proper. It was not shown that appellee either owned or had any control over the wiring inside the premises, and, if there were any defects in the wiring rendering same dangerous to the occupants of the house, actual knowledge of such defects before the electrical connections were made by appellee would be necessary in order to establish liability for any injury thereafter sustained. There was no duty on the part of appellee's employees to inspect the premises and wiring in the house before making the connection from its service wires. The rule is announced in 20 Corpus Juris, p. 364, and 9 Ruling Case Law, p. 1204, where many authorities are cited.

To attempt to hold appellee under the provisions of the city ordinance, above quoted, under the circumstances in this case, would necessitate a strained construction of the provisions of the ordinance. It is evident from the scanty record furnished us that the house occupied by the Huddlestons had been wired for electricity some time before they rented it, and electricity was used therein. We are of the opinion that appellee complied with the requirements of the ordinance when it connected the premises with its service wires the first time application was made therefor. There is nothing in the record to show that a permit was not issued at that time, and, in the absence of such evidence, we have a right to assume that it was issued. Assuredly, this ordinance does not require every new occupant of such premises to apply for the permit mentioned in the ordinance and exhibit same to appellee before appellee is authorized to furnish the premises with electricity.

Appellee introduced in evidence section 8 of an ordinance passed by the city of Dallas, enacted for its regulation, which reads as follows: "Section 8. Rules and regulations of the Dallas Power & Light Company, regarding service and meter installations for the kind and character of service to be rendered, as passed and approved by the governing body of the City of Dallas from time to time, are incorporated herein and made a part hereof."

Appellee likewise introduced in evidence rule 26, approved by the governing authorities of the city of Dallas, in effect at the time of the alleged injury. This rule reads: "The duly authorized agents of the Company shall have access at all reasonable hours to the premises of the Consumer for the purpose of inspecting wiring, and apparatus, removing the Company's property, reading meters and other purposes incident to the supplying of service by the Company. The Company, however, does not assume the duty of inspecting the Consumer's wiring, machinery, or apparatus and will not be responsible therefor."

It is evident to us that the responsibility for the injury to this little girl, if any exists, lies at the feet of the owner of the house rented by the Huddlestons.

The judgment of the trial court is affirmed.