**Nazaria G. ESTRADA et al., Appellants,**

v.

**CENTRAL POWER & LIGHT COMPANY,
Appellee.**

No. 13591.

Court of Civil Appeals of Texas.

San Antonio.

May 18, 1960.

Homero M. Lopez, J. Jack Cook, Kingsville, for appellants.

Lewright, Dyer & Redford, James W. Wray, Jr., Corpus Christi, for appellee.

BARROW, Justice.

This is a suit by Nazaria G. Estrada, individually and as next friend of her four minor children, against Central Power & Light Company for damages for the death of Benjamin Estrada, husband and father of plaintiffs.

The trial was to a jury, however, at the conclusion of plaintiffs' evidence, the trial court instructed the jury to return a verdict for the defendant, and judgment was rendered that plaintiffs take nothing. Defendant offered no evidence.

Appellants rely upon the doctrine of res ipsa loquitur to make out a case of negligence against appellee. They seek a reversal on one point: that the court erred in granting appellee's motion for instructed verdict.

In order to invoke the doctrine of res ipsa loquitur there are four elements which must be pleaded and proved: (1) The thing or instrumentality which causes the injury must be under the management of the defendant or his servants; (2) the accident must be such as in ordinary course of events does not happen, if those who have its management and control use proper care; (3) there must be an absence or unavailability of direct evidence of negligence; (4) there must exist a sufficient duty on the part of defendant to use due care. 65 C.J.S. Negligence §§ 220(2) and 220(4), pp. 987–999.

The evidence shows that on October 13, 1958, the deceased had gone to the premises of Juan Gomez at 912 E. Kleberg Street, in the City of Kingsville, Texas, to do some plumbing work. On the Gomez premises there were two houses, one at the front of the lot and one at the rear. Estrada's body was found lying prone on the wet ground

with the upper part of his body under the rear house. He was apparently attempting to crawl into or from the opening under the house when he was electrocuted. The body of deceased was lying next to the ground rod to which the ground wire running from the fuse box was attached, and it is apparent that his elbow had come in contact with this ground rod. Shortly after the discovery of his body, the ground rod was tested and found to be carrying 117 volts of electricity, which under the circumstances, according to the evidence, was sufficient to have killed Estrada.

■ The evidence shows that appellee's electric service wires run on poles down an alley to the rear of the Gomez premises, through a transformer, which steps down the current from high voltage to between 115 volts and 120 volts, the usual and customary voltage carried to customers such as the Gomez premises. The electric current is delivered to the Gomez premises through service wires to a meter attached to the front house. These wires belong to and are in the control of appellee. The meter is also the property of appellee, but is attached to the house by the owner of the property served. The record shows that appellee regularly inspected its meter to determine any abnormalities in the service and had never found any. The record further shows that the owner of the premises had never made any complaint to appellee as to the functioning of the electric service. The record shows that the front house was wired for service as early as the year 1941, and that all the wiring from the meter, throughout the front house, to the rear house, and throughout the rear house was done by the owner of the property and not by appellee. The record shows that the wiring to and in the rear house was installed in the year 1952 or 1953. The record shows without dispute that appellee did not install and has never had any control over any of the wiring, outlets or equipment in either of the two houses or the ground wires in connection therewith. The evidence further shows that the reason the ground wire and rod carried electric current when it should not, was that the ground wire was attached to the hot lead in the switch box rather than the neutral lead, and thereby the current went directly into the ground wire. We are of the opinion that appellants have wholly failed to make out a prima facie case against appellee under the doctrine of res ipsa loquitur. Welliver v. Lone Star Gas Co., Tex.Civ.App., 260 S.W.2d 70; Huddleston v. Dallas Power & Light Co., Tex.Civ.App., 93 S.W.2d 199.

Appellants rely strongly on Texas Power & Light Co. v. Bristow, Tex.Civ.App., 213 S.W. 702, and Ischar v. West Texas Utilities Co., Tex.Civ.App., 54 S.W.2d 842. These cases are readily distinguishable. In each of these, the thing which produced the injury was an excessive voltage of electricity. The control of the amount of voltage in each case was under the management and control of the defendant, whereas in the instant case the evidence showed that there was no more than the normal current of electricity flowing into the premises and that the injury was caused by the faulty wiring of the premises, which was at all times in the possession, control and management of the owner of the premises, and had never been under the control and management of appellee.

Appellants having failed to make out a case against appellee, the trial court properly granted an instructed verdict.

The judgment is affirmed.