**CENTRAL POWER & LIGHT COMPANY, Appellant,**

v.

**Oscar R. ROMERO, Appellee.**

No. 04–94–00840–CV.

Court of Appeals of Texas, San Antonio.

Nov. 20, 1996.

Rehearing Overruled June 30, 1997.

Stacy Keaton, Law Offices of Russell H. McMains, Houston, Russell H. McMains, Law Offices of Russell H. McMains, Corpus Christi, Ronald W. Bradley, Law Offices of Ronald W. Bradley, Corpus Christi, for Appellant.

Baldemar Gutierrez, David O. Gonzalez, Law Offices of Baldemar Gutierrez, Alice, for Appellee.

Before LOPEZ, STONE and DUNCAN, JJ.

## OPINION

DUNCAN, Justice.

Central Power & Light Company appeals a multi-million dollar judgment on the ground that it was not negligent as a matter of law, because it owed no duty to the plaintiff, Oscar R. Romero. We agree and therefore reverse the judgment below and render judgment in favor of CP & L.

### FACTS

On the day of the accident, Romero, an employee of Anglo Iron & Metal Company, a scrap metal recycling plant, was instructed by his supervisor to determine whether a conveyor belt machine was working properly. To make this determination, Romero turned on the machine and climbed up on a box. While standing on the box, Romero's left arm was caught in the conveyor belt assembly and amputated at the elbow.

Romero sued (1) his employer, Anglo Iron, two of its officers, and its liability and worker's compensation insurers, Transportation Insurance and Continental Casualty Company, for maintaining an unsafe workplace and negligent inspections; (2) Security State Bank for its role in manufacturing, marketing, and distributing the conveyor belt; and (3) Bob Borchers Electric, four of its employees, and CP & L for connecting and continuing to furnish electricity to Anglo Iron when they knew or should have known that it was unsafe to do so. Before trial, Romero nonsuited or settled with all of the defendants except CP & L.

Romero's pleadings alleged that CP & L was negligent in "connecting and continuing to furnish electrical service" to Anglo Iron, in "failing to conduct a proper inspection" of Anglo Iron before providing electrical service, and in failing to warn Romero of the "potential hazards resulting from connecting and continuing to furnish electrical service under the existent facts and circumstances." Romero further alleged that CP & L knew or should have known that it was unsafe to connect and furnish electrical service to Anglo Iron and that its conduct violated its own practices, policies, and procedures.

The trial court submitted the case to the jury with a single liability question inquiring whether the negligence of CP & L and Romero proximately caused the occurrence. The jury found that CP & L's negligence was the sole cause of the occurrence and assessed Romero's damages at $5,650,000. The jury also found that CP & L was grossly negligent and that $250,000 was an appropriate amount of exemplary damages. The trial court entered judgment on the jury's verdict and in accordance with CP & L's election for a dollar-for-dollar credit to reflect Romero's settlements with other defendants. CP & L appealed.

## DUTY

In its first point of error, CP & L complains that the trial court erred in denying its motion for judgment notwithstanding the verdict, because it did not owe a duty to Romero under the circumstances of this case. We agree and because our resolution of CP & L's first point of error is dispositive of this appeal, we do not reach its remaining points of error. *See* TEX.R.APP.P. 90(a).

### Scope and Standard of Review

To support a negligence action, a plaintiff must plead and prove facts giving rise to a legal duty. *Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex.1995). Whether a duty exists "is a question of law for the court to decide from the facts surrounding the occurrence in question." *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). "However, a jury question arises when (1) the facts and circumstances that a court would use to determine duty are disputed, or (2) the inferences that may be drawn from facts are disputed." 1 TEXAS TORTS AND REMEDIES § 1.03[1], *cited with approval in Mitchell v. Missouri–Kansas–Texas R.R. Co.*, 786 S.W.2d 659, 662 (Tex.),

*cert. denied,* 498 U.S. 896, 111 S.Ct. 247, 112 L.Ed.2d 205 (1990); *see also Fort Bend County Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 395 (Tex.1991).

In this case, the parties dispute whether the evidence is legally and factually sufficient to support an implied finding requisite to the imposition of a legal duty to exercise reasonable care.[1] When reviewing a legal sufficiency complaint, we review only the evidence and reasonable inferences tending to support the implied finding to determine whether there is any supporting evidence of probative force. *E.g., T.O. Stanley Boot Co., Inc. v. Bank of El Paso,* 847 S.W.2d 218, 222 (Tex.1992). In conducting factual sufficiency review, on the other hand, we review the entire record to determine whether the implied finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *E.g., Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989).

### Duty to Inspect

Romero first argues that because CP & L retained the right in its tariff to refuse service "[i]f the applicant's installation or equipment is known to be hazardous," it assumed a duty to inspect Anglo Iron's equipment and wiring before connecting or continuing to supply electricity. We disagree.

Duty is the function of several interrelated factors, including "the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the actor." *Bird v. W.C.W.,* 868 S.W.2d 767, 769 (Tex.1994). In this case, the risk, foreseeability, and likelihood of injury to others if electricity is sup-

---

1. While we recognize and follow *Mitchell* and *Sbrusch* insofar as they state that the underlying circumstances, if disputed, may give rise to a question of fact, we question whether these statements mean that the evidence arguably giving rise to a duty is subject to legal and factual sufficiency review. If this were true, and the evidence were legally but not factually sufficient to support imposition of a duty, the usual rules relating to dispositions would require that we reverse and remand the case for a new trial. But duty is a question of law and logically should be decided de novo on the record before the trial court. Neither party in this case addresses this issue and, so far as we have been able to determine, no Texas case resolves the conundrum. We therefore simply assume without deciding that the question of fact underlying imposition of a legal duty, like other questions of fact, is subject to legal and factual sufficiency review.

plied to an unsafe workplace are clear. However, the social utility of providing electricity, as well as the magnitude of the burden that would be imposed by a duty to inspect as a prerequisite to providing electricity and the costs that would be incurred by the general public of imposing that duty on CP & L, far outweigh these factors. As the Texas Supreme Court stated long ago:

> To hold that the care devolved upon such public service corporation as the Gas & Electric Company to look after the construction and maintenance of wires installed by or under the direction of private persons or concerns, without reference to their adaptability to safely carry the electric current, would impose upon such companies burdens so great as to clearly render their existence, and hence their service to the public, impracticable, if not impossible.

*San Antonio Gas & Elec. Co. v. Ocon,* 105 Tex. 139, 146 S.W. 162, 165 (1912). The absence of such a duty is, in fact, recognized in CP & L's tariff, which expressly provides that CP & L "does not assume any duty of inspecting the Customer's wiring, apparatus, machinery or equipment, and will not be responsible therefor...."[2]

Under these circumstances, we decline to impose a duty on CP & L to inspect its customer's premises before connecting or continuing to supply electricity. *See Ocon,* 146 S.W. at 165; *Sisson v. Texas–New Mexico Power Co.,* 722 S.W.2d 260, 262 (Tex. App.—Fort Worth 1986, no writ) (noting absence of authority for imposing duty on electric company in similar circumstances); *Huddleston v. Dallas Power & Light Co.,* 93 S.W.2d 199, 200 (Tex.Civ.App.—Fort Worth 1936, writ dism'd) (no duty to inspect premises and wiring in house before connecting electricity).

*Duty to Refuse to Connect or Disconnect Service*

■ Romero next argues that CP & L owed him a duty to refuse to connect or disconnect electrical service to Anglo Iron, because CP & L knew or should have known that Anglo Iron's equipment was hazardous. We disagree.

■ When an electric company neither owns nor controls the wiring inside a premises, the utility company is not liable for an injury arising out of a defect in the wiring unless it had actual knowledge of the defect before it provided electrical service. *Huddleston,* 93 S.W.2d at 200. We have thoroughly reviewed the record in this case and conclude there is no evidence that CP & L had actual knowledge that Anglo Iron's equipment or wiring was hazardous, if it was. Romero argues, however, that CP & L had constructive notice of the defects, and constructive notice suffices under this court's opinion in *Southwestern Bell Tele. Co. v. McKinney,* 699 S.W.2d 629 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). We disagree. *McKinney* held that constructive notice was sufficient when an injury resulted from a defective wire owned, controlled, and inspected by the utility, *id.* at 633; *McKinney* is silent as to the degree of knowledge required when the defective equipment or wire is owned and controlled by a private entity.

*"Good Samaritan Rule"*

■ Romero next argues that when CP & L undertook to inspect Anglo Iron's "electrical equipment, apparatus, wires, and the conveyor," it owed a duty to Romero to do so non-negligently under the "Good Samaritan Rule." *See* RESTATEMENT (SECOND) OF TORTS § 324A;[3] *see also Sbrusch,* 818 S.W.2d at

---

2. The tariff further provides that "[i]t is particularly understood that the Customer assumes full responsibility for electric current, and for the wires, apparatus and appurtenances used in connection therewith, upon Customer's premises and at and from the point of delivery of power ... if such point is located off Customer premises, and will protect, indemnify and save [CP & L] harmless from all claims for injury, including death, or damage to person or property occurring upon Customer's premises, or at and from

such point of delivery, even if due to [CP & L's] negligence, whether sole or joint, and concurrent with the negligence of Customer or third parties, occasioned by such electric current or said wires, apparatus or appurtenances."

3. § 324A. Liability to Third Person for Negligent Performance of Undertaking

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the pro-

395–96.[4] We disagree that the record establishes the factual predicate upon which Romero's argument depends—that is, that CP & L inspected Anglo Iron's "electrical equipment, apparatus, wires and the conveyor."

CP & L argues that the only evidence supporting the jury's implied finding that CP & L inspected Anglo Iron's equipment and wiring is the following deposition testimony of Anglo Iron's branch manager, Jimmy Kidd:

Question: Has Central Power & Light ever gone in to inspect any of your electrical equipment or apparatus or wires?

Answer: To inspect it?

Question: Yes, to look at it, inspect it?

Answer: Sure, a number of times.

CP & L argues that this testimony is legally insufficient to support the implied finding requisite to imposing a duty under section 324A.[5] Romero counters that Kidd's testimony is not only "some evidence" to support the jury's implied finding, but Kidd's testimony is corroborated by that of other witnesses.

tection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
   (a) his failure to exercise reasonable care increases the risk of such harm, or
   (b) he has undertaken to perform a duty owed by the other to the third person, or
   (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
RESTATEMENT (SECOND) OF TORTS § 324A (1965).

4. Since neither party objected to the omission, or requested the submission, of a jury question regarding whether CP & L inspected Anglo Iron's equipment and wiring, it is deemed found in support of the judgment. TEX.R.CIV P. 279.

5. CP & L also argues that this evidence is insufficient because Kidd later, in his deposition and at trial, repeatedly testified that he understood the question as asking whether CP & L inspected equipment owned by CP & L, not equipment owned by Anglo Iron, and he never intended to imply that CP & L inspected equipment owned by Anglo Iron. While we agree with CP & L that all of Kidd's deposition and trial testimony other than that quoted above is directly and unequivocally contrary to an implied finding, we may not and do not consider this testimony under the

We have thoroughly reviewed the record in this case and, in particular, each of the record references Romero urges as support for an implied finding that CP & L inspected Anglo Iron's "electrical equipment, apparatus, wires and the conveyor." In the ten volumes of testimony, we have found no support for Romero's assertion other than the quoted excerpt from Kidd's deposition.[6] Accordingly, the issue presented is whether Kidd's deposition testimony—standing alone—is legally sufficient to support an implied finding that CP & L inspected Anglo Iron's "electrical equipment, apparatus, wires and the conveyor" or whether it is, as CP & L argues, "less than a scintilla."

Evidence is legally insufficient to support a finding of a "vital fact" if it is "no more than a mere scintilla." Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 TEX.L.REV. 361, 363 (1960). Evidence is less than scintilla when it "is so weak as to do no more than create a mere surmise or suspicion of its existence," id., or when "reasonable minds cannot differ from the conclusion that the evidence lacks probative force" of the vital

scope and standard of review for legal sufficiency. See, e.g., T.O. Stanley Boot Co., Inc., 847 S.W.2d at 222.

6. Romero references his own testimony, as well as that of Juan A. Cabrera, Jose A. Martinez, and Manuel Trejo, all Anglo Iron employees, but each of these men testified simply that they had seen CP & L trucks and employees on Anglo Iron's premises. None testified that CP & L inspected Anglo Iron's equipment; in fact, Trejo testified that he never saw CP & L employees working on any equipment other than that owned by CP & L. Robert Rome, President of Anglo Iron Works, also testified that CP & L came onto the premises but only to inspect or work on CP & L's equipment. Romero also cites the testimony of another Anglo Iron employee, Juan A. Saldivar, Jr.; however, Saldivar testified only that while he sometimes saw CP & L employees working on Anglo Iron's premises, they worked on CP & L's transformers and nowhere else. The other witness cited by Romero, Arnaldo Guerra, a CP & L division manager, also did not testify that CP & L inspects its customer's equipment; rather, he testified that CP & L does not inspect beyond its meter unless a customer requests it, and it might not inspect even with a customer request. Guerra expressly denied that CP & L inspected Anglo Iron's equipment.

fact sought to be proved. *Id.* at 364. Accordingly, if direct evidence gives rise "to opposing inferences which are equally reasonable and plausible," "a finding that the vital fact exists is purely speculative and a 'no evidence' point [should be] sustained." *Id.* at 365. However, the scintilla rule does not apply if the record contains direct evidence of the vital fact. *Id.* at 363.

In this case, the record conclusively establishes that CP & L owned the transformers located on Anglo Iron's premises and rented them to Anglo Iron under an agreement that required CP & L to maintain them. The record further establishes that CP & L entered Anglo Iron's premises to inspect and repair these transformers. *Supra* n. 6. Given these undisputed facts, we cannot determine whether the quoted excerpt from Kidd's deposition testimony was intended to mean that CP & L inspected equipment owned by Anglo Iron or equipment rented to Anglo Iron. Rather, it is only if we infer that Kidd understood "your equipment" to mean equipment owned by Anglo Iron, and not equipment rented to Anglo Iron, that his deposition testimony can be read to support an implied finding that CP & L inspected equipment owned by Anglo Iron. An equally plausible inference exists, however—that Kidd understood "your equipment" to mean the equipment rented by Anglo Iron from CP & L.

Under these circumstances, Kidd's deposition testimony is "no more than a scintilla" and legally insufficient to support an implied finding that CP & L inspected Anglo Iron's equipment and wiring. Therefore, since Romero failed to establish the fact requisite to a duty under section 324A of the RESTATEMENT (SECOND) OF TORTS, we sustain CP & L's first point of error, reverse the judgment

below, and render judgment in favor of CP & L.[7]

7. Even if we recognized a duty under section 324A, we would still be required to reverse and render judgment in favor of CP & L. There is simply no evidence in this record that a negligent inspection by CP & L left Romero in "worse condition" than if CP & L had never undertaken an inspection or that CP & L agreed with Anglo Iron to discharge Anglo Iron's duty to Romero to provide a safe workplace or that Romero relied upon CP & L to inspect his workplace. *See City of Denton v. Page,* 701 S.W.2d 831, 836 (Tex. 1986) (Kilgarlin, J., concurring) (one of the three conditions required for liability under section 324A). Nor is there any evidence that CP & L undertook a continuing duty to inspect Anglo Iron's equipment. *See Sbrusch,* 818 S.W.2d at 397 n. 4 & accompanying text.