TEXACO, INC., Appellant,

v.

**CENTRAL POWER & LIGHT COMPANY, Appellee.**

No. 04–93–00376–CV.

Court of Appeals of Texas,
San Antonio.

Sept. 24, 1997.

Rehearing Overruled Nov. 5, 1997.

Joy M. Soloway, W. Wendell Hall, Fulbright & Jaworski, L.L.P., San Antonio, Fulbright & Jaworski, L.L.P., Houston, for Appellant.

G. Don Schauer, Schauer, Simank & Ledbetter, P.C., Corpus Christi, Stacy Keaton, Law Offices of Russell H. McMains, Houston, Russell H. McMains, Law Offices of Russell H. McMains, Corpus Christi, Baldemar Gutierrez, Law Offices of Baldemar Gutierrez, Alice, for Appellee.

Before RICKHOFF, STONE and ANGELINI, JJ.

## OPINION

ANGELINI, Justice.

Appellant, Texaco, Inc., appealed by writ of error[1] after suffering an adverse judgment based on indemnification in a personal injury action. We dismissed the appeal for lack of jurisdiction. The supreme court reversed our decision, and remanded the case to this court to consider the merits of the appeal.

In fifteen points of error, Texaco contends that (1) the plaintiffs in this case are not entitled to recover judgment from Central Power & Light under Texas Tort Reform statutes; (2) indemnification based upon the utility tariff is improper; (3) Central Power & Light owed no legal duty to the plaintiffs; (4) there is insufficient evidence to support the jury's findings regarding damages; and (5) the trial court erred in calculating prejudgment interest. We reverse and render the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

Eduardo Espinoza was employed by Industrial Electric Company, an independent contractor hired to do work for Texaco, Inc. Espinoza was dispatched to a Texaco lease to repair a transformer bank that was not sending enough power to a nearby pump. During the course of his work, Espinoza suffered an electrical shock, resulting in the loss of his finger and burns to his hand and arm. Espinoza and his wife sued Texaco and a Texaco employee. They also sued Central Power & Light (CP & L), the utility company that supplied Texaco with electricity, alleging that CP & L had provided electricity under hazardous conditions. Contending that it was not subject to liability for the accident, CP & L filed a cross-claim against Texaco, seeking full indemnity from Texaco in the event of an adverse judgment. CP & L claimed entitlement to indemnity from Texaco based on its tariff on file with the Public Utility Commission.

On the day of trial, the attorneys for all parties involved, including Texaco, announced ready. Before a jury was empaneled, however, the Espinozas' attorney announced that Texaco and the Espinozas had reached a settlement for $350,000. The trial court conducted a hearing and accepted the settlement. The trial then proceeded against the remaining non-settling defendants. The jury returned a verdict finding Espinoza thirty percent liable, Texaco fifty percent liable, and CP & L twenty percent liable for the

---

1. We note that under the new rules of appellate procedure, effective September 1, 1997, restricted appeals replace appeals by writ of error. *Compare* former TEX.R.APP P. 45 (repealed) *with* TEX.R.APP. P. 30. Because this appeal was perfected before September 1, 1997, we will consider it under former rule 45.

Espinozas' total damages of $1,129,033. After the appropriate adjustments were made, the trial court awarded the Espinozas $534,-414.50 from CP & L. The trial court's judgment further provided that CP & L was entitled to full indemnity from Texaco by virtue of CP & L's tariff on file with the Public Utility Commission.

CP & L then entered into an agreement with the Espinozas whereby CP & L reserved its right to appeal if Texaco appealed. After the time period within which Texaco could file an ordinary appeal had expired, CP & L paid the Espinozas the full amount of the judgment. Texaco subsequently brought this appeal by petition for writ of error. We held that because Texaco had participated in the actual trial by announcing ready and presenting the settlement agreement to the court, it was precluded from advancing an appeal by writ of error. *Texaco, Inc. v. Central Power & Light Co.*, 897 S.W.2d 854 (Tex.App.—San Antonio 1995). The supreme court reversed our holding, finding that Texaco could properly appeal by writ of error, and remanded the case to this court for consideration of the merits of Texaco's appeal. *Texaco, Inc. v. Central Power & Light Co.*, 925 S.W.2d 586 (Tex.1996).

## ARGUMENT AND AUTHORITY

### A. Preservation of Error in Writ of Error Appeals

On remand, CP & L contends that Texaco's complaints have not been preserved for appellate review. CP & L argues that TEX. R.APP. P. 52 and TEX.R. CIV. P. 324(b), governing preservation of error, apply in all cases tried before a jury. According to CP & L, because Texaco did not preserve its error at trial and there is no error on the face of the record, nothing is presented to this court for review. We disagree.

■ An appeal by writ of error must be brought within six months after the trial court judgment was signed, by a party to the suit who did not participate in the actual trial, and the party must complain of error that is apparent from the face of the record. *General Elec. Co. v. Falcon Ridge Apartments*, 811 S.W.2d 942, 943 (Tex.1991). Writ of error appeals are generally taken from default judgments; however, where an actual trial has taken place without the participation of one of several parties, appeal may be made by writ of error. *Tramco Enterprises, Inc. v. Independent American Sav. Ass'n,* 739 S.W.2d 944, 947 (Tex.App.—Fort Worth 1987, no writ); *Adams v. Isbell,* 615 S.W.2d 254, 256 (Tex.Civ.App.—Dallas 1981, no writ).

In situations such as this, where an actual trial has taken place, the question of preservation of error necessarily arises. On the one hand, the rules of appellate procedure require a party to preserve errors in the trial court in order to raise those errors on appeal. On the other hand, to appeal by writ of error, a party may not have participated at the actual trial. The catch-22 is apparent—if the appealing party did not participate at trial, that party could not have preserved error for appeal. This is true in both default and non-default writ of error cases. We therefore reject CP & L's attempt to distinguish the two.

■ If the rules of preservation were to be so strictly applied in writ of error cases, nothing but fundamental error and jurisdictional issues could be appealed via writ of error. Historically, however, writ of error appeals have not been so limited. In fact, review by writ of error affords an appellant the same scope of review as an ordinary appeal, that is, a review of the entire case. *Castanon v. Monsevais,* 703 S.W.2d 295, 297 (Tex.App.—San Antonio 1985, no writ); *Adams,* 615 S.W.2d at 256 (citing *Gunn v. Cavanaugh,* 391 S.W.2d 723 (Tex.1965)). And, review of the entire case includes review of all types of error, including those regarding sufficiency of the evidence. Contrary to CP & L's assertions, sufficiency of the evidence points of error have been specifically addressed and reviewed in writ of error appeals. *See Adams,* 615 S.W.2d at 256; *Specia v. Specia,* 292 S.W.2d 818, 819 (Tex. Civ.App.—San Antonio 1956, writ ref'd n.r.e.); *see also* 6 RICHARD ORSINGER, APPEALS § 30:12 (Texas Practice 1992).

■ The only requirement as to the scope of writ of error review is that the error

appear on the face of the record. *General Electric*, 811 S.W.2d at 943. The face of the record, for purposes of writ of error review, consists of all the papers on file in the appeal, including the statement of facts. *DSC Finance Corp. v. Moffitt*, 815 S.W.2d 551, 551 (Tex.1991). Should the evidence not support the judgment in a particular case, error would appear on the face of the record upon review of the statement of facts. In light of the unusual position of the writ of error appellant, we conclude that all types of error, including sufficiency of the evidence may be considered in writ of error appeals. Our conclusion is based in large part on the mandate we received from the supreme court on remand of this case:

> ... CP & L's liability to the Espinozas and the amount of damages which CP & L seeks to pass on to Texaco were established through the evidentiary stage of trial. Texaco is in no better position to prepare those issues for appeal than if it had never announced ready for trial, never appeared to inform the court of settlement, or never received notice of CP & L's theory of judgment. Because Texaco did not participate in the trial that led to judgment against it, we hold it may appeal by writ of error. Accordingly, we reverse the court of appeals' judgment of dismissal and remand the cause for considerations of Texaco's points of error.

*Texaco*, 925 S.W.2d at 591.

 The supreme court's position appears to be that Texaco, a writ of error appellant in a non-default situation, is in exactly the same position a writ of error appellant in a default situation would be. Further, the supreme court makes the point, citing *Lawyers Lloyds v. Webb*, 137 Tex. 107, 152 S.W.2d 1096 (1941), that the practical distinction between the ordinary appeal and the appeal by writ of error has to do with the issue of time needed to prepare for the appeal. The appellant who "participates in the hearing of evidence" is sufficiently familiar with the facts introduced at trial to immediately begin preparing the appeal whereas the appellant who did not

participate is unfamiliar with the record and needs additional time to prepare for the appeal. It is only logical to conclude, therefore, that a factual review is allowed in an appeal by writ of error.

We note further that the supreme court did not limit our review to any particular type of error. In fact, the court specifically directed us to consider Texaco's points of error. We are, therefore, bound to find that those points of error are reviewable by writ of error. However, with that said, we find it unnecessary to address Texaco's factual sufficiency points because our finding with regard to CP & L's duty to Espinoza is dispositive of the appeal. *See* Tex.R.App. P. 90(a). We now turn to the duty issue.

## B. Duty of a Supplier of High–Voltage Electricity

Texaco claims that CP & L owed no legal duty to Espinoza in supplying electricity to the Texaco premises, and, therefore, could not have been liable as a matter of law.[2] Texaco further contends that if the judgment against CP & L is invalid, the indemnity judgment against Texaco is likewise invalid. Conversely, CP & L argues that the evidence presented at trial is sufficient to support the trial court's finding of duty.

Tort liability depends on both the existence of and the violation of a duty. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995); *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). Whether a duty exists is a question of law for the court to decide under the facts surrounding the occurrence in question. *Id.* However, a jury question may arise where the underlying facts used to determine duty or the reasonable inferences stemming from those facts are in dispute. *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex. 1991). In the present case, we find no disputed facts relevant to the issue before us. We will, therefore, decide this issue *de novo*. *See Central Power & Light Co. v. Romero*,

---

**2.** We note that CP & L has necessarily changed its position from that taken at trial. At trial, CP & L argued that it owed no duty to the plaintiffs, whereas, on appeal, CP & L takes the unusual position that it did owe a duty. We assume this is because CP & L's right to indemnity from Texaco is dependent on CP & L's liability to the plaintiffs.

948 S.W.2d 764, 766–67 (Tex.App.—San Antonio 1996, writ requested); *Mueller v. McGill,* 870 S.W.2d 673, 675 (Tex.App.—Houston [1st Dist.] 1994, writ denied).

█ In *Romero,* a case factually similar to the present one, we refused "to impose a duty on CP & L to inspect its customer's premises before connecting or continuing to supply electricity." *Id.* 948 S.W.2d at 767. In *Romero,* the plaintiff was injured when his arm was caught in a conveyor belt assembly at his workplace. He sued CP & L for connecting and continuing to furnish the electricity that operated the conveyor belt. We held that the financial and societal cost of imposing a duty on CP & L to inspect each point of delivery as a prerequisite to providing electricity outweighs the risk of injury if electricity is supplied to an unsafe workplace. *Id.* (citing *San Antonio Gas & Elec. Co. v. Ocon,* 105 Tex. 139, 146 S.W. 162, 165 (1912)). We reaffirm that holding here, and note a complete absence of case law imposing such a duty in similar situations.

In fact, the court in *Sisson v. Texas–New Mexico Power Co.,* 722 S.W.2d 260 (Tex. App.—Fort Worth 1986, no writ), recognized the lack of Texas case law in stating that it knew of "no duty of an electric utility to someone who is injured on the premises of its customer while working on its customer's internal electrical equipment under conditions over which the utility has no control." *Id.* at 262. In *Sisson,* a prisoner was severely burned by a live electrical line while working on the prison's equipment. He sued the utility company that supplied the power to the prison. The court held that the utility company owed no duty to the prisoner where it had no control over the electrical system within the prison's boundaries. *Id.*

█ In the present case, CP & L attempts to distinguish *Sisson* based on the fact that the plaintiff in *Sisson* failed to provide the court with any authority supporting a duty on behalf of the electric utility while the record here contains the utility tariff that was on file with the Public Utility Commission at the time of the accident. Specifically, CP & L contends that its tariff created a contractual duty on the part of CP & L to avoid a hazardous condition on Texaco's lease

because, through the tariff, CP & L retained the right to inspect equipment and to refuse service to installations not meeting safety regulations. The relevant portion of CP & L's tariff provides as follows:

REQUEST OR CONTRACT FOR SERVICE

... The company may refuse service to any applicant ... [i]f the applicant's installation or equipment is known to be hazardous or of such character that satisfactory service cannot be given.

MAINTENANCE OF ELECTRICAL EQUIPMENT ON CUSTOMER PREMISES AND RESPONSIBILITY FOR INJURIES AND DAMAGES THEREFROM

Customer will maintain adequate protection equipment in good operating condition on his equipment and otherwise install and maintain his electrical equipment in an entirely safe and efficient manner and in full compliance with all laws and local ordinances and the National Electrical Code and the rules and regulations of [CP & L] in effect at any time. ... The duly authorized agents of [CP & L] will have free access at all reasonable hours to the premises of the Customer for the purposes of inspecting wiring, apparatus and equipment, removing [CP & L]'s property, reading meters, and for other purposes incident to the furnishing of services. [CP & L] does not assume any duty of inspecting the Customer's wiring, apparatus, machinery, or equipment, and will not be responsible therefor. It is particularly understood that the Customer assumes full responsibility for electric energy furnished to him at and past the point of delivery described as being the point where the electric energy first leaves the line or facilities provided and owned by [CP & L] and enters the line or facilities provided and/or owned by the Customer. ...

The clear language of the tariff provides that CP & L assumes no duty to inspect its customer's equipment or otherwise protect individuals from hazardous electrical conditions on customer property once electricity has passed the point of delivery. We recog-

nize that CP & L does reserve the right to enter customer premises for the purposes of inspecting certain unnamed equipment; however, the sentence following this reservation specifically provides that CP & L does not assume any duty of inspecting *customer* equipment. This apparent ambiguity indicates that CP & L's reservation of the right to inspect equipment contemplates the inspection of *CP & L's* own equipment located on customer premises, while responsibility for inspecting the equipment not owned by CP & L stays with the customer.

■ With this in mind, we note that the record before us indicates that the equipment involved in the injury at issue was not owned by CP & L. Further, while the record reveals that CP & L did inspect certain equipment it had installed on Texaco premises, it did not inspect the equipment at issue. As such, CP & L owed no contractual duty to Espinoza to inspect Texaco's premises before providing electricity. *See Romero,* 948 S.W.2d at 766–67. Accordingly, CP & L did not know and was not required to have known whether Texaco's equipment was hazardous. Under the terms of the tariff, *if* CP & L had known of a hazardous electrical condition on Texaco property, it certainly had the right to refuse Texaco service; however, CP & L had no duty to discover such a condition, and ultimate responsibility for equipment deficiencies once service was connected rested with Texaco.

## C. Right to Indemnification

■ Because CP & L had no common-law or contractual duty to Espinoza, we find that CP & L could not, as a matter of law, be liable for the Espinozas' injuries. We recognize the difficult nature of this finding, given the fact that CP & L has already paid the full amount of the judgment to the Espinozas and is now seeking to recoup that payment by way of indemnity from Texaco. This is an unusual case from a procedural perspective, and, not surprisingly, we have been unable to locate any cases procedurally on point. We venture to guess that in the majority of cases, where a true question as to the liability of a defendant such as CP & L exists, that defendant would appeal the judgment itself.

If successful, the reversal of the defendant's liability would result in an automatic reversal of any indemnity finding incident to the liability. However, because CP & L did not appeal the issue of its liability to the Espinozas, we are unable to alter the disposition of the case with respect to CP & L's liability. Instead, the sole issue before us in this appeal is Texaco's obligation to indemnify CP & L as ordered in the trial court's judgment.

A contract to indemnify against liability, where the obligation matures when the liability is incurred, is significantly different than a contract to indemnify against loss, where the obligation matures when the loss is suffered. *Russell v. Lemons,* 205 S.W.2d 629, 631 (Tex.Civ.App.—Amarillo 1947, writ ref'd n.r.e.). The nature of the obligation undertaken must be determined from the terms of the contract. *Mullins v. Elieson,* 611 S.W.2d 921, 925 (Tex.Civ.App.—Amarillo 1981, no writ). The indemnity provision at issue makes no mention of indemnification for mere loss or expense, but for claims. Specifically, the tariff by which CP & L claims a right to indemnity from Texaco provides that CP & L's customers shall "indemnify [CP & L] against and hold [CP & L] harmless from all claims for[ ] injuries to persons. . . ." We find that this language contemplates valid and legally enforceable claims; otherwise, CP & L would be eligible for indemnity from its customers every time an unsubstantiated or frivolous claim of injury is made. Such an interpretation of the tariff would be unconscionable. Accordingly, CP & L's right to indemnification necessarily assumes a loss as a result of *liability. See Mullins,* 611 S.W.2d at 925.

Because CP & L is not liable to Espinoza as a matter of law, Texaco has no obligation to indemnify CP & L for any damages it paid. While we find this an unfortunate situation for CP & L as it paid the judgment amount to Espinoza in anticipation of full indemnity from Texaco, we are compelled to reverse the judgment of the trial court with respect to the indemnity issue. Texaco's fourth point of error is therefore sustained. Because our decision regarding this point of error is dispositive of the appeal, it is unnec-

essary for us to address Texaco's remaining points of error.

The judgment of the trial court is reversed and judgment is rendered that CP & L has no right of indemnity against Texaco.